UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

OMG FIDELITY, INC.,

                              Plaintiff,

        vs                                        6:06-CV-1184

SIRIUS TECHNOLOGIES, INC.,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

JONES DAY                                 JENNY L. SHEAFFER, ESQ.
Attorneys for Plaintiff                   MEREDITH M. WILKES, ESQ.
North Point                               ROBERT L. CANALA, ESQ.
901 Lakeside Avenue                       ROBERT P. DUCATMAN, ESQ.
Cleveland, Ohio 44114

BOND, SCHOENECK & KING, PLLC              JONATHAN B. FELLOWS, ESQ.
Attorneys for Plaintiff
One Lincoln Center
Syracuse, New York 13202-1355

KAYE SCHOLER LLP                          JACQUELYN L. SUMER, ESQ.
Attorneys for Defendant                   JOHN J.P. HOWLEY, ESQ.
425 Park Avenue                           MICHAEL D. BLECHMAN, ESQ.
New York, New York 10022                  STEPHEN J. ELLIOTT, ESQ.

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

        Plaintiff OMG Fidelity, Inc., ("plaintiff" or "OMG") brings this action against defendant

Sirius Technologies, Inc., ("defendant" or "Sirius") asserting five causes of action for tortious

interference with contract (Counts I and II), misappropriation of trade secrets (Count III), unfair competition (Count IV), and conversion (Count V).

Defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes. Oral argument was heard in Utica, New York, on February 9, 2007. Decision was reserved.

## II. FACTS

The following facts are taken from the complaint, as is required on a Rule 12(b)(6) motion.

In 1989, Dr. Alan Ruffini ("Ruffini") was hired by Auric Corporation ("Auric") to develop, produce, and sell electroless nickel applications for memory disk products. Pursuant to the terms of his employment agreement with Auric ("employment agreement"), Ruffini promised to not use or disclose directly or indirectly to any person outside the company, any confidential information either during or after the course of his employment. "Confidential information," as used in the agreement, included:

> [A]ll business information of any nature and in any form which at the time or times concerned is not generally known to those person engaged in business similar to that conducted or contemplated by the Company and which relates to any one or more of the aspects of the present or past business of the Company or any Affiliate or any of their respective predecessors including patents and patent applications; inventions and improvements, whether patenable or not; development projects; policies, processes, formulas, techniques, know how; and other facts relating to sales advertising, promotions, financial matters, customers, customers' lists, customers [sic], purchases or requirements and other trade secrets.

(Compl. ¶ 14.) The employment agreement also provided that if Ruffini's employment terminated, he would "return promptly upon the termination" all copies of records, drawings,

materials, memoranda and other data constituting or pertaining to confidential information. (Compl. ¶ 13.)

      In 1992, Ruffini and Auric executed a non-disclosure agreement ("non-disclosure agreement").  Under the non-disclosure agreement, Ruffini agreed not to use or disclose proprietary, confidential, or other trade secret information owned by Auric, during or after his employment.

      In 1998, OMG acquired Auric.  OMG is a leading producer of electroless nickel applications, including those produced for memory disk use.  As a result of the acquisition, OMG succeeded to all rights conferred to Auric by the employment and non-disclosure agreements.

      Ruffini's employment responsibilities did not change as a result of the acquisition – he still developed, produced, and sold electroless nickel applications for memory disk products.

      From the time OMG acquired Auric until April 2001, Ruffini worked with Komag,[1] one of OMG's customers, to modify OMG's electroless nickel application formulae to meet Komag's demands for its thin-film memory disk products.

      In early 2001, Ruffini resigned from OMG and obtained an ownership interest in defendant Sirius.  Sirius develops, manufactures, distributes, and services electroless nickel applications in direct competition with OMG.  Ruffini also became Sirius's Chief Executive Officer ("CEO").

---

[1] Komag is a leading supplier of "thin-film" disks used for digital data storage on personal computers, personal stereo equipment, digital video recorders, game boxes, and other consumer electronic storage devices.

On October 12, 2001, OMG sent a letter to Ruffini reminding him of his non-disclosure obligations after it learned that he would be working for defendant on electroless nickel applications. OMG requested that he sign and return the letter as acknowledgment of his obligations. The letter also stated that plaintiff was investigating reports that he had been contacting vendors and former OMG employees regarding it's proprietary information. Ruffini did not respond to the letter.

Several months later, OMG learned that Ruffini had been in contact with its customers, including Komag, and offered to provide them with a competitive electroless nickel application formula and OMG's manufacturing processes and technology.[2]

On April 19, 2005, Komag wrote to OMG stating that Ruffini and Sirius were not using OMG's technology and manufacturing processes.

In September 2006, plaintiff learned that Komag was installing tanks and other materials at its Malaysia facility, which would be used to blend and produce electroless nickel applications. At this time, plaintiff also learned that defendant and Ruffini agreed to sell an electroless nickel formula, provide technical support, and manufacturing know how to Komag. OMG contends that these services and the formula were identical to what it provided Komag during Ruffini's employment.

As a result of the foregoing facts, plaintiff commenced this action on October 4, 2006.

---

[2] In the complaint, OMG does not allege the specific date on which Ruffini began contacting its customers, or when it learned Ruffini was contacting its customers.

## III.  STANDARD OF REVIEW

On a Rule 12(b)(6) motion to dismiss, the allegations in the complaint are accepted as true and all reasonable inferences are made in the plaintiff's favor.  <u>Grandon v. Merill Lynch & Co.</u>, 147 F.3d 184, 188 (2d Cir. 1998); <u>Grant v. Wallingford Bd. of Educ.</u>, 69 F.3d 669, 673 (2d Cir. 1995).  The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985).  Therefore, a defendant's Rule 12(b)(6) motion should only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  <u>Conely v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); <u>Grandon</u>, 147 F.3d at 188.

Moreover, where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise this as an affirmative defense in a pre-answer motion to dismiss.  <u>Ghartey v. St. John's Queen's Hosp.</u>, 868 F.2d 160 (2d Cir. 1989).  Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim, rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter.  <u>Id</u>.

## IV.  DISCUSSION

### A.  Statute of Limitations

Defendant moves to dismiss the complaint on the ground that all of plaintiff's claims are time-barred under the three year statute of limitations set forth in § 214 of the New York Civil Practice Law & Rules ("CPLR").

CPLR § 214 provides that an action for "nonpayment of money collected on execution; for penalty created by statute; to recover chattel; for injury to property; for personal injury; for malpractice other than medical, dental or podiatric malpractice; or to annul

marriage on the ground of fraud," must be commenced within three years.  N.Y. C.P.L.R. 214 (McKinney 2003).

Since Sirius's motion to dismiss under § 214 pertains to all five of plaintiff's claims, each will be addressed in turn.

### 1.  Tortious Interference with Contract Claims (Counts I and II)

Section 214 mandates that claims for tortious inference with contract be commenced within three years.  See Hwang v. Dunkin' Donuts Inc., 840 F. Supp. 193, 196 (N.D.N.Y. 1994); Spinap Corp. v. Cafagno, 302 A.D.2d 588 (N.Y. App. Div. 2d Dep't 2003). The statute of limitations for tortious inference with contract accrues the moment the defendant intentionally causes the plaintiff damage by wrongfully inducing third parties to breach their contracts with the plaintiff.  See Hwang, 840 F. Supp at 196.  Thus, the underlying contract must be breached before the statute of limitations is triggered.  Id.

Plaintiff asserts two claims for tortious inference with contract.

First, OMG alleges that Sirius tortiously interfered with the employment agreement when it directed Ruffini to not return all records, materials, memoranda, and other data constituting or pertaining to OMG's confidential information.  In 2001, Ruffini left OMG, became Sirius' CEO, but failed to return OMG's confidential information and materials promptly after his termination.  Consequently, the statute of limitations for this cause of action began to run soon after plaintiff left OMG in 2001.  Therefore, plaintiff's first tortious interference with contract claim was time-barred when the complaint was filed in 2006. Count I of the complaint will be dismissed.

With respect to the second claim for tortious interference with contract, plaintiff alleges that defendant directed Ruffini to disclose and use plaintiff's confidential information,

thereby breaching the employment and non-disclosure agreements.[3]  In the complaint, plaintiff asserts that, on Sirius's behalf in 2001, Ruffini solicited customers by offering to provide plaintiff's trade secrets.  However, plaintiff does not allege that Ruffini actually made disclosures in breach of the employment and non-disclosure agreements at that time. Plaintiff does aver that Sirius directed Ruffini to disclose, and Ruffini disclosed, OMG's confidential information to Komag in September 2006, thereby breaching his contracts with OMG.  Taking plaintiff's allegations as true, Ruffini only offered to provide trade secrets in 2001, but did not breach the contracts until 2006.  Therefore, OMG's second tortious interference with contract claim accrued in September 2006 and is not time-barred.  Count II of the complaint will not be dismissed on statute of limitations grounds.

### 2.  Trade Secret Misappropriation Claim (Count III)

Claims for trade secret misappropriation are also subject to the three-year statute of limitations under CPLR § 214.  Architectronics, Inc. v. Control Sys., Inc., 935 F. Supp. 425, 432 (S.D.N.Y. 1996).  Under New York law, a claim for misappropriation of trade secrets accrues when the defendant uses or discloses a trade secret "in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means."  Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co., 297 F. Supp. 2d 463, 482 (N.D.N.Y. 2003).

As discussed above, plaintiff alleges that defendant directed Ruffini to use and disclose, and Ruffini used and disclosed, plaintiff's trade secrets, and proprietary and confidential information in breach of the employment and non-disclosure agreements in 2006.  However, plaintiff does not allege that Ruffini used or disclosed its confidential

---

[3] OMG's complaint is ambiguous with respect to the date on which Sirius directed Ruffini to breach his employment and non-disclosure agreements.

information in 2001 when he offered to provide the confidential information to potential customers. Accepting OMG's allegations as true, defendant did not misappropriate its trade secrets until September 2006. Thus, OMG's trade secret misappropriation claim accrued in September 2006 and is not time-barred. Count III of the complaint will not be dismissed.

### 3. Unfair Competition Claim (Count IV)

The three-year statute of limitations imposed by CPLR § 214 also governs claims for unfair competition. Norbrook Labs. Ltd., 297 F. Supp. 2d at 491. "'The gravamen of a claim of unfair competition is the bad faith misappropriation of a commercial advantage belonging to another by infringement or dilution of a trademark or trade name or by exploitation of proprietary information or trade secrets.'" Id. (quoting Eagle Comtronics, Inc. v. Pico Prods., Inc., 256 A.D.2d 1202, 1203 (N.Y. App. Div. 4th Dep't 1998)). A claim for unfair competition accrues when the defendant misappropriates the results of the labor, skills and expenditures of the plaintiff. See id.

Again, there are two pertinent sets of allegations. First, in 2001 plaintiff alleges that defendant directed Ruffini to acquire customers by offering to provide plaintiff's technology and manufacturing know how. Second, plaintiff alleges that in September 2006, defendant and Ruffini provided technical support, manufacturing know how, and an electroless nickel application formula to Komag, which were similar to what plaintiff provided Komag during Ruffini's employment. While the alleged conduct of defendant and Ruffini in 2001 was of questionable ethical character, it cannot be said that it rose to the level of misappropriation of OMG's trade secrets. Therefore, plaintiff's cause of action for unfair competition accrued in September 2006 and is not time-barred. Count IV of the complaint will not be dismissed.

### 4. **Conversion Claim (Count V)**

A claim for conversion is also subject to the three-year statute of limitations under CPLR § 214. See Songbyrd, Inc. v. Estate of Grossman, 23 F. Supp. 2d 219, 222 (N.D.N.Y. 1998). The statute of limitations for conversion is triggered at the time of the conversion. Id. (citing Sporn v. MCA Records, Inc., 58 N.Y.2d 482, 489 (1983)). Conversion occurs when a party in unauthorized possession of property acts to exclude the rights of the property owner. See id. "A party acts to the exclusion of the rights of another by exercising dominion and control over the property that is inconsistent with the interests of the true owner." Id. (citing Shaw v. Rolex Watch, U.S.A., Inc., 673 F. Supp. 674, 682 (S.D.N.Y. 1987)). Objects of conversion include documents which embody an intangible right. Iglesias v. United States, 848 F.2d 362, 364 (2d Cir. 1988).

Plaintiff alleges that upon the termination of Ruffini's employment with OMG in 2001, he was in possession of records, materials, memoranda, and other data constituting or pertaining to OMG's confidential information, as well as its technology and know how. Plaintiff also alleges that it knew that Ruffini and Sirius were in possession of this property upon the termination of Ruffini's employment with OMG and subsequent employment with Sirius. Plaintiff further alleges that it was aware of instances whereby Ruffini and Sirius offered its know how and technology to customers, including Komag, in 2001. At that point, defendant had exercised dominion and control over plaintiff's know how and technology in a manner inconsistent with OMG's rights. Therefore, the conversion claim accrued in 2001 and is time-barred. Count V of the complaint will be dismissed.

### 5. **Summary**

Therefore, defendant's motion to dismiss plaintiff's second tortious interference with contact claim, as well as its trade secret misappropriation and unfair competition claims, will be denied. However, defendant's motion to dismiss plaintiff's first tortious interference with contract claim and conversion claim will be granted.

### B. **Substantive Claims**

Defendant also moves to dismiss plaintiff's second tortious interference with contract claim and conversion claim on the ground that it has failed to state a claim upon which relief can be granted. Since plaintiff's conversion claim will be dismissed on statute of limitation grounds, it will not be discussed here.

### 1. **Tortious Interference with Contract Claim (Count II)**

Defendant moves to dismiss plaintiff's second tortious interference with contract claim on the ground that it was not a stranger to the agreements.

To state a claim for tortious interference with a contract, under New York law, a plaintiff must show: (1) the existence of a valid contract between plaintiff and a third-party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of a breach by the third party; and (4) resulting damages. See Res. Developers, Inc. v. Statue of Liberty-Ellis Island, 926 F.2d 134, 142 (2d Cir. 1991) (citing Strobl v. N.Y. Mercantile Exch., 561 F. Supp. 379, 386 (S.D.N.Y. 1983)). It is well-settled in New York that "'only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract.'" Minetos v. City Univ. of N.Y., 925 F. Supp. 177, 187 (S.D.N.Y. 1996) (quoting Koret, Inc. v. Christian Dior, S.A., 161 A.D.2d 156, 157 (N.Y. App. Div. 1st Dep't 1990)). However, where there is a clear unity of interest between a party to the contract and the third

party, e.g., the party to the contract is the CEO of the third party, the third party is not a

stranger to the contract and cannot be held liable for tortious interference thereof.  See

Minetos, 925 F. Supp. at 187-88; Nu-Life Constr. Corp. v. Bd. of Ed. of the City of N.Y., 204

A.D.2d 106, 107 (N.Y. App. Div. 1st Dep't 1994).

Plaintiff alleges that defendant directed Ruffini to breach the employment and non-

disclosure agreements by using and disclosing the confidential information, know how,

technology, and other trade secrets of OMG.  As previously discussed, these activities

occurred in September 2006, when defendant and Ruffini allegedly sold an electroless nickel

formula, and provided technical support and manufacturing know how to Komag.  At this

time, Ruffini was defendant's owner and CEO.  Thus, there was a unity of interest between

Ruffini and Sirius such that Sirius cannot be considered a stranger to the contracts between

Ruffini and OMG.

Count II of the complaint will be dismissed.

## V.  **CONCLUSION**

Plaintiff's first tortious interference with contract claim and conversion claim are time-

barred under CPLR § 214; however, plaintiff's second tortious interference with contract

claim, trade secret misappropriation, and unfair competition claims are not time-barred.

Plaintiff's second tortious interference with contract claim fails because there was a unity of

interest between Ruffini and Sirius such that Sirius was not a stranger to the contracts

between Ruffini and OMG.

Accordingly, it is

ORDERED that

1.  Defendant's motion is GRANTED in part and DENIED in part;

2.  Defendant's motion to dismiss plaintiff's claims for tortious interference with contract and conversion (Counts I, II, and V) is GRANTED;

3.  Counts I, II, and V of the complaint are DISMISSED;

4.  Defendant's motion to dismiss plaintiff's claims for unfair competition and misappropriation of trade secrets (Counts III and IV) is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  August 16, 2007
        Utica, New York